IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:13-CV-663-D

| | | |
|---|---|---|
| DAVID L. TANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff David L. Tann ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") on the grounds that he was not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings (D.E. 29, 33). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 35). The motions have been fully briefed.[1] For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

## BACKGROUND

### I.    CASE HISTORY

#### A.    Plaintiff's 2010 Appeal

Plaintiff filed an application for DIB on 4 October 2006, alleging a disability onset date of 9 January 2005. Transcript of Proceedings ("Tr.") 11. At the time of his application, plaintiff

---

[1] Each party filed a memorandum in support of its motion (D.E. 30, 34).

resided in Philadelphia, Pennsylvania (Tr. 103) and was represented by Pennsylvania counsel (Tr. 81-82). In January 2007, plaintiff relocated to Raleigh, North Carolina. Tr. 45.

The application was denied initially and a request for a hearing was timely filed.[2] Tr. 13. Following two hearings in June and November 2008,[3] an Administrative Law Judge ("ALJ") issued a decision denying the application on 3 December 2008. Tr. 11-18. Plaintiff timely requested review of this decision by the Appeals Council (Tr. 6-7), but it denied his request on 8 September 2010 (Tr. 1-5). On 2 November 2010, plaintiff commenced an action in this court seeking review of the decision ("2010 appeal"). *See Tann v. Astrue*, No. 5:10-CV-475-BO (E.D.N.C.). He did so through new counsel who has represented him in all subsequent proceedings as well.

In his motion for judgment on the pleadings, plaintiff argued that the ALJ, as well as his attorney at the hearings, failed to adequately develop the administrative record regarding his shoulder impairment, which resulted from a work-related injury in April 2003 while he was employed by the City of Philadelphia ("Philadelphia"). (Pl.'s Mot. for J. on Pldgs. (2010 App. D.E. 28) 10-14). He also contended that the ALJ had failed to account for his physical impairments in formulating his RFC, relying only on his mental impairments. (*Id.* at 9-10).

Plaintiff filed as attachments to the memorandum supporting his motion for judgment on the pleadings 114 pages of records pertaining to his shoulder impairment ("shoulder impairment records"). (Mem. Supporting Pl.'s Mot. for J. on Pldgs., Attachs. (2010 App. D.E. 28-1 to 28-7;

---

[2] Because this case was designated as a "Disability Redesign Prototype Case" (Tr. 69), plaintiff appealed his initial denial directly to the hearing level of review. *See* 20 C.F.R. § 404.906(b)(4) ("In the reconsideration elimination model, we will modify the disability determination process by eliminating the reconsideration step of the administrative review process.").

[3] The two hearings conducted by the ALJ on this application were held in Pennsylvania on 17 June 2008 (Tr. 29) and 7 November 2008 (Tr. 19). Although plaintiff had moved to North Carolina before these hearings were conducted, he traveled to Pennsylvania to appear at the first hearing (Tr. 31), but appeared only through counsel at the second hearing (Tr. 21).

Inst. Case D.E. 30-1 to 30-7)[4]).  The shoulder impairment records include an 18 October 2004 letter to Philadelphia's medical director from rehabilitation specialist Yutong Zhang, M.D., who treated plaintiff from 5 June 2003 to 18 July 2005.  (2010 App. D.E. 28-1; Inst. Case D.E. 30-1). In the letter, Dr. Zhang states his adoption of the 1 September 2004 findings of orthopedic surgeon Gerald R. Williams, M.D.[5] that plaintiff had reached his maximum medical improvement, had permanent partial disability of his left shoulder, and was subject to the following specific permanent restrictions:

> no repetitive use of his upper left extremity, only occasional overhead use of his left upper extremity, no overhead lifting with his left upper extremity and no lifting of anything heavier than 20 lbs. below shoulder height with both arms.  No one-handed lifting.

(2010 App. D.E. 28-1 at 1-2; Inst. Case D.E. 30-1 at 1-2) ("permanent restrictions").  Plaintiff's motion for judgment on the pleadings recited the permanent restrictions.  (Mem. Supporting Pl.'s Mot. for J. on Pldgs. (2010 App. D.E. 28) 4).

The other shoulder impairment records are:  a 20 September 2005 letter from the Philadelphia Board of Pensions and Retirement granting plaintiff's application for service-connected disability benefits (2010 App. D.E. 28-2; Inst. Case D.E. 30-2); a 22 December 2004 disability determination by Philadelphia that plaintiff was partially and permanently disabled (2010 App. D.E. 28-3; Inst. Case D.E. 30-3); records from Philadelphia Industrial Healthcare Center ("PHIC") where plaintiff was treated by Dr. Zhang and others for his shoulder injury from April 2003 to July 2005 (2010 App. D.E. 28-4; Inst. Case D.E. 30-4); records from Penn

---

[4] As noted below, plaintiff filed a set of the shoulder improvement records in the instant case with the memorandum supporting his motion for judgment on the pleadings.  The docket numbers for these documents in the instant case are set out with the docket numbers in the 2010 appeal to facilitate reference to them.

[5] The records do not contain a copy of the 1 September 2004 opinion of Dr. Williams referenced by Dr. Zhang. However, with the exception of the "no one-handed lifting" limitation, Dr. Zhang's own treatment records indicate that he found plaintiff to have the same restrictions on 14 October 2004.  (2010 App. D.E. 28-4 at 14; Inst. Case D.E. 30-4 at 14).

3

Orthopedic Institute where plaintiff was treated by Dr. Williams and orthopedic surgeon Jonathan A. Drezner, M.D. from 19 September 2003 to 5 May 2004 (2010 App. D.E. 28-5; Inst. Case D.E. 30-5); records from WakeMed Emergency Services where plaintiff was treated from 11 August 2007 to 17 September 2007 (2010 App. D.E. 28-6; Inst. Case D.E. 30-6);[6] and physical therapy records from La Fortaleza Physical Therapy Center where plaintiff underwent physical therapy from 13 June 2003 to 4 August 2004 (2010 App. D.E. 28-7; Inst. Case D.E. 30-7).

The Commissioner filed an unopposed motion to remand the case for further administrative proceedings, presumably agreeing with the grounds for remand asserted by plaintiff. (Mot. for Remand (2010 App. D.E. 29)). As grounds for remand, the motion summarily stated that "further fact finding and analysis is required"; it did not discuss the contents of the shoulder impairment records. (*Id.* at 2). This court allowed the Commissioner's motion and remanded the case under sentence four of 42 U.S.C. § 405(g) for further administrative action. (28 June 2011 Order (2010 App. D.E. 30)); *see also* Tr. 458. The court's order did not discuss the contentions in plaintiff's motion. *See* Tr. 458.

### B. Appeals Council's Remand Order

In response to the court's remand order, on 11 July 2011, the Appeals Council entered an order vacating the ALJ's decision and remanding the case to an ALJ for further proceedings. Tr. 462-64. The language of the remand order indicates that the Appeals Council agreed with plaintiff's contention that the ALJ failed in his duty to develop the record regarding plaintiff's

---

[6] Unlike the other records comprising the shoulder impairment records, these records are not primarily concerned with plaintiff's shoulder impairment, although they do reference plaintiff's past history of shoulder surgery (2010 App. D.E. 28-6 at 2; Inst. Case D.E. 30-6 at 2) and his "[history] of excessive Motrin use due to remote shoulder injury" (2010 App. D.E. 28-6 at 6; Inst. Case D.E. 30-6 at 6). Rather, these records focus on plaintiff's August 2007 treatment for complaints of right hip and lower abdominal pain, lower extremity pain, and blood in his stool. (2010 App. D.E. 28-6 at 1; Inst. Case D.E. 30-6 at 1).

4

shoulder impairment. The Appeals Council, referring expressly to the shoulder impairment

records, stated:

> The claimant alleged disability on January 9, 2005 due to a "fractured left
> shoulder with cyst, depression, carpal tunnel in left hand and slight nerve
> damage" (Tr. 74, 117). The hearing decision found, however, that the claimant
> has the [RFC] to perform light work except that he needs to be able to alternate
> between sitting and standing at will and is limited to only simple, routine, 1-2 step
> tasks in a low stress environment (Tr. 15-16). The hearing decision did not
> mention whether the claimant's upper extremity impairments were "severe" and
> therefore did not accommodate them in the residual functional capacity. *The
> claimant alleged that there was evidence showing that in September 2004, doctors
> deemed him permanently partially disabled with permanent restrictions
> including: no repetitive use of his left arm, only occasional overhead use of his
> left arm, no overhead lifting with the left arm and no lifting of anything below
> shoulder height heavier than 20 pounds for both arms. The [ALJ] had a duty to
> determine whether additional evidence was needed for a full and fair inquiry into
> the matters at issue. Further development of the residuals of the claimant's left
> upper extremity impairment is needed in accordance with HALLEX [i.e.,
> Hearings, Appeals, and Litigation Law Manual] I-2-1-1.* [7]

Tr. 462 (emphasis added). Thus, with the exception of the restriction against any one-handed

lifting, the Appeals Council remand order recited the permanent restrictions.

Accordingly, the Appeals Council directed the ALJ to, among other things

> [o]btain additional evidence concerning the claimant's left upper extremity
> impairment in order to complete the administrative record in accordance with the
> regulatory standards regarding consultative examinations and existing medical
> evidence (20 CFR 404.1512-1513). The additional evidence may include, if
> warranted and available, consultative examinations and medical source statements
> about what the claimant can still do despite the impairment.

---

[7] HALLEX is a "manual in which the 'Associate Commissioner of Hearings and Appeals conveys guiding
principles, procedural guidance and information to the office of Hearings and Appeals (OHA) staff.'" *Melvin v.
Astrue*, 602 F. Supp. 2d 694, 699 (E.D.N.C. 2009) (quoting HALLEX I-1-0-1). The provision of the HALLEX
manual cited by the Appeals Council provides in relevant part as follows:

> The Administrative Law Judge (ALJ) or a hearing office (HO) staff person designated by
> management must review each case before the hearing to determine whether additional evidence is
> needed for a full and fair inquiry into the matters at issue. If additional evidence is needed, the
> ALJ or designee should initiate development before the hearing is scheduled. The ALJ should
> make every effort to obtain all documentary evidence before the hearing, and to receive the
> testimony of all pertinent witnesses at the hearing.

HALLEX I-2-1-1 (available online at http://ssa.gov/OP_Home/hallex/I-02/I-2-1-1 html (last visited 5 Feb. 2015).

5

Case 5:13-cv-00663-D   Document 36   Filed 02/05/15   Page 5 of 23

Tr. 463. The Appeals Council further directed the ALJ to offer plaintiff the opportunity for a hearing and issue a new decision on the remanded claim, as well as on an associated claim for DIB filed by plaintiff on 28 October 2010. Tr. 464.

### C. Proceedings following Remand

In response to the Appeals Council's remand order, a new hearing was scheduled for 6 March 2012 before an ALJ different from the one who issued the prior decision. *See* Tr. 501-24. In advance of the hearing, on 27 October 2011, the ALJ sent plaintiff and his counsel a letter, on "Form HA-L56 (05-2011)," notifying plaintiff that the proposed exhibits for the hearing were available online for review, requesting that plaintiff submit any other relevant medical evidence, and requesting that plaintiff notify the Social Security Administration ("SSA") when the relevant evidence was up to date and the case was ready to be scheduled for a hearing. Tr. 590-91.

At the hearing, which was conducted as scheduled on 6 March 2012 and at which plaintiff and a vocational expert testified (Tr. 393-413), the ALJ admitted 20 exhibits[8] into evidence with no objection by plaintiff (Tr. 397-98). These exhibits did not include the shoulder impairment records. In a written decision dated 12 April 2012, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB. Tr. 374-84.

Plaintiff requested review by the Appeals Council on the grounds that the ALJ failed to properly consider and discuss findings relating to plaintiff's right hip impairment in a report, dated 28 February 2011, by consultative examiner M.A. Samia, M.D. (D.E. 643-47). Tr. 368. Plaintiff's request for reconsideration made no reference to the plaintiff's shoulder impairment or the shoulder impairment records. Tr. 368. On 22 July 2013, the Appeals Council found no basis

---

[8] Although the ALJ admitted only Exhibits B1F to B20F at the hearing (Tr. 397-98), the record also includes an Exhibit B21F (Tr. 789-96), which contains medical records that predate the ALJ's decision. The court is unable to determine whether this exhibit was considered by the ALJ because he did not reference it in his decision and did not include with his decision a list of the exhibits he considered. However, the extent to which the ALJ considered this exhibit is not material to the court's analysis or recommended disposition of this case.

6

for changing the hearing decision and did not assume jurisdiction over the case. Tr. 365-67. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. On 20 September 2013, plaintiff commenced the instant proceeding for judicial review pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* Mot. (D.E. 1); Order Denying Mot. (D.E. 5); Compl. (D.E. 6)). As in his 2010 appeal, plaintiff included the shoulder impairment records as attachments to the memorandum supporting his motion for judgment on the pleadings. (*See* D.E. 30-1 to 30-7).

## II.     STANDARDS FOR DISABILITY

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

## III.   FINDINGS OF THE ALJ

Plaintiff was 51 years old on the date last insured and 53 years old on the date of the hearing. *See* Tr., *e.g.*, 383 ¶ 7. He has at least a high school education and past relevant work as an asphalt machine operator and construction laborer. Tr. 383 ¶ 6.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity from the alleged disability onset date of 9 January 2005 through 31 December 2010, the date last insured. Tr. 377 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: mild carpal tunnel syndrome in the left hand, a fractured left shoulder with cyst, status post fixation of the right proximal femur, and depressive disorder. Tr. 377 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals one of the Listings. Tr. 377 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform light work,[9] subject to the following additional limitations:

---

[9] Title 20 C.F.R. § 404.1567(b) defines "light work" as involving

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). The *Dictionary of Occupational Titles* ("DOT") defines "light work" as:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and

9

[T]he claimant requires the option to alternate between sitting and standing every 45-60 minutes; is limited to frequent overhead work; and is limited to performing simple, routine, repetitive tasks ["SRRTs"].

Tr. 379 ¶ 5.

Based on this RFC determination, the ALJ found at step four that plaintiff was unable to perform any of his past relevant work. Tr. 383 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of cashier, mail clerk, and sales attendant. Tr. 384 ¶ 10. The ALJ accordingly concluded that plaintiff had not been under a disability at any time from 9 January 2005 through 31 December 2010. Tr. 384 ¶ 11.

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison*

---

strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT app. C § IV, def. of "L-Light Work" (U.S. Dep't of Labor 4th ed. rev. 1991), http://www.oalj.dol.gov/libdot.htm (last visited 5 Feb. 2015). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

*Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## DISCUSSION

## I.    OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff argues that the decision of the Commissioner should be reversed and this case be remanded for an award of benefits or, alternatively, for a new hearing on the grounds that the ALJ erred in: (1) failing to adequately develop the administrative record regarding plaintiff's shoulder impairment; (2) failing to adequately consider the effect of plaintiff's use of a cane on his RFC; and (3) assessing plaintiff's credibility. Because the first issue is dispositive of this appeal, the court limits its discussion to it.

11

## II. ALJ'S FAILURE TO DEVELOP THE ADMINISTRATIVE RECORD REGARDING PLAINTIFF'S SHOULDER IMPAIRMENT

### A. Parties' Contentions

Plaintiff contends that the ALJ failed to adequately develop the administrative record by not acquiring and considering the shoulder impairment records. He argues that the Appeals Council's remand order directed the ALJ to consider these records specifically as evidenced by its recitation of permanent restrictions. He also contends that the SSA erroneously failed to transmit the shoulder impairment records to the ALJ for consideration on remand. Further, plaintiff asserts that the absence of these records was prejudicial to him because they constitute evidence that directly contradicts the ALJ's findings with respect to his shoulder impairment.

The Commissioner disagrees with plaintiff's characterization of the Appeals Council's remand order and asserts that the Appeals Council "[did not] direct the ALJ to consider any specific records," but only "to develop the record regarding Plaintiff's shoulder impairment." (Comm'r's Mem. 6). The Commissioner also cites to the Appeals Council's statement that the ALJ "may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating sources." (*Id.* (citing Tr. 463)). She contends that the ALJ complied with this specific directive when he sent the form letter to plaintiff and his attorney requesting that plaintiff review the ALJ's proposed exhibits and submit any additional evidence in advance of the hearing. (*Id.* (citing Tr. 590)). The Commissioner further references plaintiff's failure to raise the issue of the missing shoulder impairment records both at the hearing before the ALJ and later to the Appeals Council when seeking review of the ALJ's decision. (*Id.* at 7).

As demonstrated by the parties' respective arguments and the procedural history of this case, the instant appeal is largely a result of a series of missteps by both the SSA and plaintiff with respect to plaintiff's left shoulder impairment. Each party's argument with respect to these

12

records focuses, to some extent, on whether the ALJ complied with the Appeals Council's remand order. While the remand order is relevant to the court's determination as to whether the ALJ adequately developed the record in this case, the court will not address the specific issue of whether the ALJ complied with the Appeals Council's remand order because "it is not the task of this Court to 'review internal, agency-level proceedings . . . [such as] whether the ALJ complied with specific provisions of the Appeals Council's remand order.'" *Lail v. Colvin*, No. 5:13-CV-00089-MR-DLH, 2014 WL 4793234, at *4 (W.D.N.C. 25 Sept. 2014) (quoting *Bass v. Astrue*, No. 1:06-cv-591, 2008 WL 3413299, at *4 (M.D.N.C.), *mem. and recomm. adopted by* 2008 WL 3413299, at *1 (8 Aug. 2008)). Rather, as noted above, the court's review is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson*, 402 U.S. at 401. For the reasons discussed below, the court concludes that the ALJ's decision is not supported by substantial evidence because the ALJ failed to adequately develop the record with respect to plaintiff's shoulder impairment.

### B.     Analysis

"Although a claimant has a duty to diligently supply medical records to the SSA documenting the claimant's impairments and limitations, the ALJ bears the responsibility of developing the claimant's 'complete medical history.'" *Baysden v. Colvin*, No. 4:12-CV-303-FL, 2014 WL 1056996, at *9 (E.D.N.C. 18 Mar. 2014) (internal quotation marks omitted). "[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). "The ALJ may develop the record by questioning witnesses, requesting evidence, and

subpoenaing witnesses." *Zook v. Comm'r of Soc. Sec.*, No. 2:09CV109, 2010 WL 1039456, at *4 (E.D. Va. 35 Feb. 2010), *rep. and recomm. adopted by* 2010 WL 1039830, at *1 (18 Mar. 2010) (citing 20 C.F.R. §§ 404.944, 404.950(d)).

A case must be remanded for further development of the record "[w]here the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant." *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980). "The key consideration is 'whether the record contained sufficient medical evidence for the ALJ to make an informed decision' regarding the claimant's impairment." *Springer v. Astrue*, No. 1:11-CV-03407, 2013 WL 3771329, at *11 (D. Md. 16 July 2013) (quoting *Craft v. Apfel,* No. 97-2551, 1998 WL 702296, at *3 (4th Cir. 1998) (internal quotations omitted)); *see also Blackwell v. Colvin*, No. 4:13-CV-00006, 2013 WL 5739153 (W.D. Va.), at *6, *rep. and recomm. adopted by* 2013 WL 5739153, at *1 (22 Oct. 2013) (holding that remand was required where the ALJ failed to obtain additional evidence regarding the plaintiff's mental status where the reports of two psychological examining consultants suggested "the presence of a serious, if not disabling, mental impairment").

Here, the Appeals Council effectively determined in its remand order, and the court agrees, that the administrative record is not complete without the shoulder impairment records. Specifically, the Appeals Council noted that the ALJ did not discuss whether plaintiff's shoulder impairment was severe despite plaintiff's having expressly listed his shoulder impairment in his DIB application. Tr. 462; *see also* Tr. 74, 160, 241 (documents containing plaintiff's allegations that shoulder impairment was a ground for disability). The Appeals Council also recited precisely, as noted, the permanent restrictions with the exception of the no one-handed lifting. Tr. 462 (referring to D.E. 30-1 at 1-2). The Appeals Council stated that under these

14

circumstances the ALJ "had a duty to determine whether additional evidence was needed" regarding plaintiff's shoulder impairment and that "development of the residuals of the claimant's left upper extremity impairment is needed for a full and fair inquiry into the matters at issue." Tr. 462. Accordingly, the Appeals Council directed the ALJ to "[o]btain additional evidence concerning the claimant's left upper extremity impairment in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513)." Tr. 463.

There is no question that the ALJ was aware of the Appeals Council's directive: he recited it virtually verbatim in his decision. Tr. 374-75. He even included the Appeals Council's listing of the permanent restrictions. Tr. 374.

Notwithstanding this directive and the ALJ's awareness of it, the record contains no medical evidence from the principal period during which plaintiff's shoulder impairment was treated, namely, from April 2003, when the injury occurred, to September 2004, when plaintiff was found to have reached maximum medical improvement and to be subject to the permanent restrictions. Rather, the period covered by the medical evidence that was included in the administrative record begins in March 2005 and ends in January 2012. It is, of course, the shoulder impairment records that contain medical evidence regarding plaintiff's left shoulder impairment for the April 2003 to September 2004 period.

The court recognizes that the April 2003 to September 2004 period precedes the alleged disability onset date of 9 January 2005. Medical evidence of plaintiff's shoulder impairment from that period is nonetheless relevant because, among other reasons, it addresses the nature of the injury to plaintiff's left shoulder, the principal treatment he received for injury, and, most importantly, the extent and permanent nature of the restrictions imposed on his shoulder. By

15

characterizing the restrictions as permanent, the medical evidence indicated that they would extend into the future. Moreover, the alleged onset of disability postdates the April 2003 to September 2004 period by only three months. Therefore, even if the restrictions had not been characterized as permanent, they would arguably be relevant to the claimed period of disability.

Despite the clear necessity of this medical evidence, the record indicates that the only effort the ALJ made was to send the standard form letter regarding submission of evidence to plaintiff and his counsel. Tr. 590-91. It is certainly doubtful that the Appeals Council's order contemplated such a cookie-cutter approach in this case.

This effort by the ALJ was insufficient not only because of the Appeals Council's directive and the importance of the shoulder impairment records, but also because the effort required to obtain them would have been minimal. These records were all filed by plaintiff in the 2010 appeal in this court. Thus, the ALJ could have readily obtained them from the SSA's counsel in the 2010 appeal, from this court, or, it appears, from the Appeals Council itself. There is no indication that the ALJ sought the records from any of these sources.

As to the Appeals Council, while the administrative record does not indicate expressly the records that it reviewed in preparing its remand order, the fact that it found the administrative record not to be adequately developed with respect to plaintiff's shoulder impairment, as plaintiff specifically advocated in the memorandum supporting his motion for judgment on the pleadings, suggests that the Appeals Council reviewed plaintiff's memorandum. Plaintiff's memorandum is the only document in the court record setting forth this argument since the Commissioner filed only a motion for remand in response to plaintiff's motion for judgment on the pleadings not addressing plaintiff's contentions, and the court's remand order summarily allowed the remand motion also without addressing plaintiff's arguments. But an even stronger indication that the

16

Appeals Council reviewed plaintiff's memorandum, if not the shoulder impairment records which were attached to it as well, is its recitation in its remand order of specific permanent restrictions on the shoulder imposed in 2004. This listing appeared only in the memorandum and shoulder impairment records.

The Appeals Council's having reviewed plaintiff's memorandum and possibly the shoulder impairment records attached to it would be consistent with the SSA's own internal procedures. Chapter I-4-3 of the HALLEX manual contains detailed procedures for processing a case after a court remand. It provides that where, as here, the court remanded in response to the Commissioner's own motion for remand, the Appeals Council remand order should explain the reason for remand because the court's order "will normally indicate only that the Commissioner's or joint motion for remand is granted." HALLEX § I-4-3-32(A). This HALLEX section further provides that the Appeals Council's remand order in such situations should "includ[e] a detailed discussion of the basis for remand, the facts in the case and the action to be undertaken on remand by the ALJ to definitively address and resolve all issues in the case." HALLEX § I-4-3-32(F).

To comply with these procedures, the Appeals Council would obviously have needed plaintiff's memorandum because, as previously noted, it and the shoulder impairment records with it were the only documents in the 2010 appeal that provided an explanation for the court's remand of the case. Indeed, HALLEX § I-4-3-2, Clerical Procedures for Incoming Remand Orders, provides as follows:

> F. Check Case for Completeness
>
> The support staff must review the remand order to determine if there are additional documents, such as magistrate judge reports *or new evidence submitted to the court*, which must be obtained. In the case of circuit court remands, both the circuit and district court remand orders must be in the file. *If the support staff*

*determines that the case is not ready to be worked because some document(s) is not in file, the missing document must be requested from the [SSA's Office of General Counsel] that handled the case.* If the remand is time-limited, or if the only missing material is additional evidence referenced in the court's order, the support staff must not delay the case to request the missing evidence.

HALLEX § I-4-3-2 (emphasis added).

Despite the Appeals Council's apparent review of plaintiff's memorandum and possible review of the shoulder impairment records themselves, and its own procedures requiring such review, the Commissioner asserts that the ALJ was not required to consider the shoulder impairment records on remand because plaintiff did not submit them to the SSA. In effect, the Commissioner asks the court to sanction the fiction that the SSA lacked not only actual possession of the shoulder impairment records, but even reasonable access to them, such that plaintiff should bear the ultimate responsibility for their non-inclusion in the administrative record. The court declines to endorse such disingenuous gamesmanship.

It is also no valid defense by the Commissioner that plaintiff had the benefit of counsel at the hearing and therefore was not entitled to the leeway regarding submission of evidence a pro se claimant can be accorded. *See Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980) (holding that in in pro se cases, the ALJ must "assume a more active role in helping claimants develop the record"). Plaintiff also had counsel at the 2008 hearings which eventuated in the 2010 appeal, but that did not stop the Appeals Council from determining in its remand order that the administrative record had not been adequately developed regarding plaintiff's shoulder impairment.

The omission of the shoulder impairment records was prejudicial to plaintiff. Most significantly, the ALJ made a finding that "[d]espite the claimant's reports, there is insufficient evidence of record he was given permanent restrictions regarding his left shoulder." Tr. 381-82.

As noted, however, the 18 October 2004 letter of Dr. Zhang sets out specific permanent restrictions on plaintiff's left shoulder which Dr. Williams found plaintiff to have and which Dr. Zhang adopted.

The basis for the permanent restrictions was explained in detail in Dr. Zhang's 18 October 2004 letter. He explained:

> MRI test of the left shoulder was performed on July 17, 2003, which revealed an abnormality of the intraosseous lesion at the posterior-superior glenoid rim of the left shoulder. The patient was initially treated with conservative management with pain medications and physical therapy. He failed to make steady progress and he was referred to see Dr. Williams, orthopedic surgeon, for further evaluation. Arthroscopic debridement and arthroplasty was performed on April 29, 2004 by Dr. Williams. The post-operative diagnosis at that time was osteochondral defect of the posterior glenoid, chondromalacia of the humerus, left shoulder.
>
> After surgery, the patient was managed with physical therapy and pain medications. The patient was last seen by Dr. Williams on September 1, 2004. At that time he still had some intermittent pain in the left shoulder. He lacks about 5 degrees overhead elevation and about 10 degrees of external rotation with his arm at 90 degrees of abduction. As per Dr. Williams, the patient has reached maximum medical improvement and he recommended that the patient be placed on permanent partial disability. Specifically, he recommended the following restrictions: no repetitive use of his left upper extremity, only occasional overhead use of his left upper extremity, no overhead lifting with his left upper extremity and no lifting of anything heavier than 20 lbs. below shoulder height with both arms. No one-handed lifting.

(D.E. 30-1 at 1-2). Dr. Zhang went on to indicate his agreement with the permanent restrictions imposed by Dr. Williams and with Dr. Williams' assessment that plaintiff be placed on permanent and partial disability. (D.E. 30-1 at 2).

The opinions of Dr. Williams and Dr. Zhang are supported by Dr. Zhang's treatment records from PHIC (D.E. 30-1), Dr. Williams' treatment records from Penn Orthopedic Institute (D.E. 30-5), and the La Fortaleza physical therapy records (D.E. 30-7). All of these records are included in the shoulder impairment records.

As a result of Dr. Zhang's recommendation, Philadelphia informed plaintiff on 22 December 2004 that the city medical director had determined him to be partially and permanently disabled from performing his duties for the city and, consequently, he was being separated from his position. (D.E. 30-3 at 1). On 20 September 2005, the Philadelphia Board of Pensions and Retirement notified plaintiff that his application for service-connected disability benefits had been granted. (D.E. 30-2 at 1). These additional records are also all included in the shoulder impairment records.

Thus, inclusion of the shoulder impairment records in the administrative record would have eliminated any basis for the ALJ to find, as he did, that there was insufficient evidence that plaintiff was given permanent restrictions regarding his left shoulder. The omission of these records thereby prejudiced plaintiff with respect to this deleterious finding.

Moreover, the permanent restrictions, as set out in and substantiated by the shoulder impairment records, are significantly more limiting than the mere limitation to frequent overhead work found by the ALJ. The omission of the shoulder impairment records from the administrative record prevented plaintiff from demonstrating these greater restrictions. Indeed, the ALJ cited "relatively weak medical evidence" as one of his reasons for rejecting the alleged degree of limitation plaintiff claimed. Tr. 382. The omission of the shoulder impairment records thereby prejudiced plaintiff in this additional way.

The limited evidence relating to plaintiff's left shoulder that the ALJ did consider and cite, which, as indicated, postdates the principal treatment period, does not show that plaintiff regained any capacity in his left shoulder or that the permanent restrictions were no longer applicable. These records consist, in part, of treatment records from the Durham Veteran's Administration Medical Center ("DVAMC") where plaintiff was provided both primary care and

20

mental health services from March 2007 to October 2010 for a variety of conditions including, depression, nicotine dependence, hypercholesterolemia, and gout (Tr. 648-723 (Ex. B17F)). These records show that between 2007 and 2010, more than two and a half years after plaintiff was found to have permanent restrictions, plaintiff complained about shoulder pain to his primary care provider, physician's assistant Phyllis Lungelow. *See, e.g.*, Tr. 672 (16 Sept. 2010), 678 (29 Mar. 2010), 713 (3 May 2007). The records suggest that the pain was prompted by movement of his left arm, which he preferred to manage by simply avoiding the activities that caused it. *See, e.g.*, Tr. 678 (plaintiff complained of "pain in the shoulder *with certain activities*" and "[p]refers avoiding activities that cause pain and Tylenol" (emphasis added)); Tr. 713 (plaintiff complained of "intermittent left shoulder pain *with certain movements*" (emphasis added)); Tr. 714 (plaintiff reported "mild pain *with external rotation* of the left shoulder" (emphasis added)). This evidence is consistent with the permanent restrictions.

The other medical evidence regarding plaintiff's left shoulder considered by the ALJ was the 28 February 2011 report by state consultative examiner Dr. Samia, M.D. (Tr. 643-47 (Ex. B16F)). He made the following findings: "Left shoulder, tenderness to palpation in generalized fashion. Range of motion in the left shoulder, forward elevation 60 to 70 degrees, posteriorly 20 degrees, abduction 80 to 90 degrees. The patient complains of subjective discomfort in range of motion in all directions, bilateral." Tr. 646. Dr. Samia concluded that plaintiff had "subjective discomfort with modest range of motion" and that he "would defer to his treating orthopedist regarding long-term prognosis." Tr. 646. Not only are these findings consistent with the permanent restrictions, they show that, on at least one measurement, plaintiff was even more limited. Specifically, while Dr. Williams indicated that plaintiff had 90 degrees of range of

motion on abduction in 2004 (D.E. 30-1 at 1), Dr. Samia found plaintiff to have as low as 80 degrees (Tr. 646).[10]

For the foregoing reasons, the court concludes that the ALJ failed to adequately develop the record with respect to plaintiff's shoulder impairment and that this failure was prejudicial to plaintiff. Without the shoulder impairment records the ALJ did not have sufficient medical evidence to make an informed decision regarding plaintiff's shoulder impairment. *See Springer*, 2013 WL 3771329, at *11. Accordingly, it will be recommended that this case be remanded for further proceedings under sentence four of 42 U.S.C. § 405(g) to consider the shoulder impairment records.[11]

## CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's decision is not supported by substantial evidence or based on proper legal standards. Accordingly, IT IS RECOMMENDED that:

1. plaintiff's motion (D.E. 29) for judgment on the pleadings be ALLOWED and the Commissioner's motion (D.E. 33) for judgment on the pleadings be DENIED;

---

[10] The court further notes that the ALJ mistakenly described plaintiff's own testimony about his shoulder limitations. While the ALJ states that plaintiff testified that he "has 60-65% use of his hand" (Tr. 380 (emphasis added)), presumably referring to plaintiff's carpel tunnel syndrome, this testimony related to the extent he could use his left arm due to his shoulder impairment (Tr. 402). Specifically, plaintiff testified as follows:

| Q | How [INAUDIBLE] use do you have of that left arm? |
| A | Not much. I'd say — |
| ALJ: | What do you think about, not much as — |
| A | I'll say about 60 to 65 percent. |
| Q | Okay, well, can you lift weight with that left arm? |
| A | Not a lot of weight, no. |

Tr. 402.

[11] In making the determination that remand is required under sentence four of 42 U.S.C. § 405(g), the court need not rule on the Commissioner's contention under sentence six of § 405(g) ("sentence six") that the shoulder impairment records were submitted for the first time to this court in the instant case, that they do not satisfy the requirements for introduction of new evidence into the record, and that they therefore do not require remand of this case under sentence six. Nevertheless, the court does note that the prior discussion belies the notion that the shoulder impairment records were submitted for the first time to this court in the instant case.

2. this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation; and

3. counsel for the Commissioner be DIRECTED to provide copies of the shoulder impairment records (D.E. 30-1 to 30-7) to the Commissioner for inclusion in the administrative record in this case for consideration in further proceedings on remand.

In making this recommendation, the court expresses no opinion on the weight that should be accorded any piece of evidence. That is a matter for the Commissioner to decide.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 19 February 2015 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 5th day of February 2015.

James E. Gates
United States Magistrate Judge